CIACCIO, Judge.
New Orleans Public Service, Inc. appeal *3 ed[1] the jury verdict which awarded plaintiffs damages of $50,000 for personal injuries sustained by Georgina McCurry when she fell over a trash can bracket embedded in the median area on Canal Street in New Orleans. Plaintiffs have answered the appeal and are seeking an increase in the jury award. Finding the judgment of the district court to be clearly wrong, we reverse.
The defendants contend that the trial judge erred in his instructions to the jury, and in his handling of the testimony of an expert traffic engineer, and in the jury’s failure to find the plaintiff contributorily negligent. The plaintiff alleges that the jury award was insufficient.
Since we find that the plaintiffs failed to prove their case against this defendant, we do not address the other specifications of error.
On July 3, 1980 Mr. and Mrs. Martin McCurry were visiting New Orleans after having traveled from their home town in Connecticut. They came to the City in order to attend a national convention being held at the Rivergate Convention Center.
While in town the couple was staying at the Quality Inn Motel on Tulane Avenue. On the date of this accident, at approximately 7 p.m., the McCurrys boarded a New Orleans Public Service Bus on Tulane Avenue with the intention of proceeding to the Rivergate. On the bus they asked for directions and were advised that they would have to transfer buses at the corner of Liberty and Canal Streets, in order to catch the Canal Street bus to the River-gate. When the bus upon which they were riding reached Liberty Street the couple exited, crossed Canal Street and began to wait at the bus stop located on the median of that street for their next bus. While waiting for the Canal Street bus the couple saw a family whom they recognized as also attending the convention. The family waved to Mr. & Mrs. McCurry and crossed the street to join them. The McCurrys then moved a few steps on the median, away from the bus stop sign, toward the family. They engaged in a conversation and, shortly thereafter, Mrs. McCurry made one step and turned rapidly to see if the bus was coming. Mrs. McCurry’s foot had become engaged in a bracket which was located on the median and imbedded in the cement, causing her to fall.
She heard her knee crack and felt a sharp pain, whereupon she began to scream. Mr. McCurry and one of the men with whom they had been talking came to Mrs. McCurry’s aid. A cab was hailed and Mrs. McCurry was taken to Tulane Medical Center where x-rays revealed that she had sustained a broken knee cap. The plaintiff first underwent orthopedic surgery on July 8, 1980, at which time her shattered kneecap was repaired with wires and pins. A second surgical procedure was necessitated when pain resulted from the wiring, occasioned by the first operation, and because of arthritis at the surgical site. Mrs. McCurry’s kneecap was finally removed and she underwent a third knee operation. Mrs. McCurry had a 20-30% disability to the leg and an 8-12% disability of the entire body which greatly restricted her physical activities.
The plaintiff has the burden of proving every element of his cause of action. Tillman v. Massey, 445 So.2d 749 (La.App., 4th Cir., 1984), writ den., 446 So.2d 743 (La., 1984). Negligence must be established with reasonable certainty and by a preponderance of the evidence and the showing of mere possibility or probability of negligence is insufficient. Jordan v. Travelers Ins. Co., 245 So.2d 151, 257 La. 995 (1971); Derouen v. State Farm Mutual Auto. Ins. Co., 445 So.2d 139 (La.App., 3rd Cir., 1984).
In this case the plaintiffs premised New Orleans Public Service Inc.’s liability upon the following basis:
This accident resulted from the negligence of defendant, the New Orleans Public Service, in failing to provide a safe area for ingress and egress of a public conveyance thus allowing a dan *4 gerous hazard to exist in the immediate area where passengers board and exit the public conveyance knowing full well the extreme danger to life and limb that this hazard created. With hundreds of buses passing this spot daily, the defendant, New Orleans Public Service knew, or should have known that the area provided by them for exiting or boarding passengers was extremely dangerous and that serious injury to a user of the public conveyance was likely to occur and negligently failed to do anything about this hazard.
However, we conclude from our review of the record that the plaintiffs failed to prove the negligence of New Orleans Public Service as there was no showing that this defendant knew or should have known of the presence of the bracket and should have taken steps to remedy this potentially hazardous situation.
John Exnicious, a traffic engineer who worked for the city for 32¾⅛ years, testified as an expert witness. He stated that the bus lanes located on the median area of Canal Street were the responsibility of New Orleans Public Service, Inc. who conducted a regular maintenance program for this area. He testified that New Orleans Public Service is not responsible for maintaining the area of land where the bracket was located. According to Exnicious, the bracket was owned by the City of New Orleans and used by the Department of Sanitation. The bracket was in an area maintained by the City and was used in connection with a trash container. The Sanitation Department conducted trash pickups in this area three times a week and New Orleans Public Service operated numerous buses which passed the area every week. He testified that a joint responsibility would exist between the defendants to report the condition if they were aware of it, and it would be the responsibility of the bracket’s installer to correct the problem.
In this case the record is devoid of any proof that New Orleans Public Service had actual knowledge of the exposed bracket. Moreover, the conditions and location of the impediment were not such that New Orleans Public Service should have known of its existence. That is, the evidence reveals that the bracket was 18 inches by 4 inches in size and was located nearer the street than the bus traffic lanes, in an area approximately parallel to a street light post. Moreover, there was no evidence presented which would indicate how long the bracket had been in this area in its exposed state or whether it was even visible to bus drivers from the location where the buses would stop to allow passengers to board or exit. Under these conditions we find that the plaintiffs failed to prove that New Orleans Public Service knew or should have known of the existence of the exposed bracket or of its potentially hazardous condition.
Plaintiffs argue, however, that because New Orleans Public Service, Inc. is a common carrier it owes its passengers the highest degree of care. Thus, they reason that no actual knowledge of the dangerous condition is required and the slightest breach of duty constitutes actionable negligence.
A common carrier, while not the insurer, is required to exercise the highest degree of care for the safety of its passengers. (Emphasis supplied). Green v. Taca International Airlines, 293 So.2d 198 (La.App., 1974). All that is required is that the passenger be deposited in a safe place. Matte v. Continental Trailways, Inc., 259 So.2d 653 (La.App., 1972), reversed other grounds, 278 So.2d 60 (La., 1973). Once the bus passenger exits the vehicle safely, he has lost his status as a passenger and is no longer owed the highest degree of care by the public carrier. Miller v. New Orleans Public Service, Inc., 430 So.2d 1103 (La.App., 4th Cir., 1983). Upon departure, the former passenger becomes a pedestrian, owed the same duty as any other pedestrian. See: Miller v. New Orleans Public Service, Inc., supra.
Moreover, if a passenger is deposited in a place of safety and leaves the safe place and is subsequently injured, there is no liability on the part of the carrier. *5 Matte v. Continental Trailways, Inc., supra.
In this case the McCurrys exited one bus at the corner of Liberty and Canal Streets. They were delivered safely to their point of departure by the defendant’s bus, lost their passenger status and became pedestrians. At this point the couple crossed the street to await the arrival of a second bus, and arrived safely at the Canal Street bus stop. The plaintiffs contend that this action restored to them the status of a boarding passenger and under the rationale of Green v. Taca International Airlines, supra, they were again owed the highest degree of care. We do not agree. The facts of the Green case, supra are clearly distinguishable from the present facts.
In the Green case, supra, Mrs. Green was proceeding to the defendant’s plane to board. In order to do so she had to traverse a distance from the boarding gate, at the lower concourse of the airport terminal, for about 125 feet, in the dark, where the plane was parked behind two other planes. She tripped and fell over a safety loop in the ground. The loop was required by Aviation regulations in order to ground aircraft during fueling.
In the Green case, supra, the plaintiff was engaged in boarding. She was required to take this course in order to reach the plane. The impediment which caused the injury was required to be there because of federal regulations. The impediment was actually used by the airlines in refueling operations. Thus, under this set of facts it can reasonably be inferred that the airline knew or should have known of the existence of the impediment and have taken steps to remedy the situation.
In this case, plaintiff was not engaged in the boarding process at the time of her injury. No evidence was presented that she had to traverse this path in order to board the bus. Likewise, the evidence presented did not indicate that the impediment was one normally used by the carrier nor that it was in an area owned or controlled by the carrier. Rather the evidence indicated that the area in question was owned and controlled by a third party, the City. There is simply no evidence presented from which to infer that this defendant knew or should have known of the existence of this impediment.
Furthermore, the actions of the McCur-rys further distinguishes this case from Green, supra. That is, even assuming ar-guendo that the carrier warranted the couple’s safety while at the bus stop awaiting the second bus, the couple lost the protection they would have been afforded as boarding passengers when they removed themselves from the bus stop area in order to converse with their conventioneer acquaintances.
Accordingly, we find that the plaintiffs have failed to establish with reasonable certainty and by a preponderance of the evidence the negligence of New Orleans Public Service, Inc.
Moreover, even if we assume, ar-guendo, that this defendant was proven to be negligent, the plaintiff’s recovery would be barred by her own negligence. That is, the record clearly indicates that the plaintiff had seen and knew there was something on the ground but she had forgotten about it. She stated that it was broad daylight at the time and there was nothing distracting her nor blocking her view. She did not change her direction so as to avoid the bracket. Under these circumstances, the jury was clearly wrong in not finding the plaintiff contributorily negligent. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
For the reasons assigned, the judgment of the district court is reversed at plaintiffs’ cost.
REVERSED.

. Defendant City of New Orleans has not appealed. The judgment as to this defendant is final.